AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>OSCAR GARCIA GARCIA<br><br>*Defendant(s)* | )<br>)<br>) Case No. 8:17-mj-01108-JSS<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 9, 2017__ in the county of __Polk__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(u) | Stealing or unlawfully taking away firearms from the business inventory of a federal firearms licensee (FFL) |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jeffrey A. Burt, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/6/2017

_____
*Judge's signature*

City and state: Tampa, Florida

JULIE S. SNEED, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Special Agent Jeffrey A. Burt, being duly sworn, do hereby depose and state:

1. Your Affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and has been assigned as such since February of 2005. Your Affiant is currently assigned to Tampa Group III, which investigates violent crime as it relates to illegal use and possession of firearms. Your Affiant has received specialized training which ranges from advanced undercover techniques to identifying the place of manufacture for various firearms and ammunition.

2. Prior to becoming a Special Agent with ATF, your Affiant was employed as a Special Agent with the Florida Department of Law Enforcement (FDLE) for five years, an investigator with the Florida Department of Insurance/State Fire Marshal's Office for one year, and as a Police Officer with the Tallahassee Police Department for four years.

3. As a Special Agent with the ATF, your Affiant is a federal law enforcement officer as described in Title 18, United States Code, Section 2510(7). As such, your Affiant is responsible for investigating and enforcing violations of federal law. Your Affiant has investigated matters involving the unlawful possession of firearms. Your Affiant has made arrests and conducted searches pertaining to these types of investigations.

4. As a Special Agent in the ATF, your Affiant has completed Special Agent Basic Training (SABT) at the Federal Law Enforcement Training Center,

which certified him as a criminal investigator/special agent. Your Affiant has also been directly involved in federal investigations and has assisted other agents in conducting investigations, including but not limited to joint, interagency investigations. Your Affiant has conducted physical surveillance, executed search warrants and reviewed recordings, including recordings of individuals involved with unlawful firearms possession. Your Affiant has interviewed witnesses, victims, and worked with cooperating individuals.

5. Your Affiant has learned the following information in his official capacity, by first hand observations, as well as by receiving information from federal and local law enforcement in reference to the investigation of Oscar Garcia GARCIA (Date of Birth: 1/26/1984) and Jerry Nelson REYES; AKA: Jerry TORRES (Date of Birth: 9/9/1981).

6. Your Affiant submits this affidavit in support of a Criminal Complaint charging Oscar GARCIA with stealing or unlawfully taking away firearms from the business inventory of a federal firearms licensee (FFL), in violation of 18 U.S.C. § 922(u). This affidavit is being submitted for the limited purpose of establishing probable cause. Therefore, your Affiant has not included each and every fact known to him concerning this investigation. Your Affiant has set forth only the facts that he believes are necessary to establish probable cause that GARCIA committed the above-referenced crimes.

## PROBABLE CAUSE

7.  On December 24, 2016 at approximately 3:30 a.m., a suspect broke into Guns Galore Inc., a federal firearms licensee (FFL 1-59-105-01-7E-24475) located at 2440 US Highway 92 East in Lakeland, Florida. It was determined that the store did not have a video surveillance system. The alarm was triggered when the suspect made entry into the store. The Polk County Sheriff's Office processed the scene.

8.  Investigators reviewed surveillance video from neighboring businesses. It was determined that a single suspect removed the lock to the front door with a hammer and screw driver, allowing entry into the store. Once the suspect entered the store, the suspect attempted to kick in the glass display case with negative results. The suspect utilized a screw driver to lift the top of the glass case and removed twelve (12) pistols from the case. The suspect dropped one of the pistols while exiting the store, which was recovered. The suspect stole a total of eleven (11) handguns from the display cabinet and one AR-15 rifle that was on display on the wall. The screw driver broke during the burglary and the suspect left it at the scene.

9.  On Monday, January 9, 2017, at approximately 1:33 a.m., Rapture Guns and Knives, a federal firearms licensee (FFL # 159105-01-8K-19249), located at 8216 US Highway 98 North, Lakeland, Florida, 33809, was burglarized resulting in the theft of fifty-eight (58) firearms.

10. Affiant reviewed surveillance video of the burglary. The surveillance video depicts two suspects burglarizing the store. Motion sensors were activated as

the two suspects moved along the south side of the building and approached the front door. Suspect 1 (S1) wore gloves, a dark colored hoodie, a light colored skull cap, a headband light and facial coverings. Suspect 2 (S2) wore a dark colored hoodie with the hood pulled over his head, facial coverings and dark pants. S1 appeared to be slightly shorter with a stocky build as compared to S2, who had a slender and taller build.

11. S1 knelt down in front of the door and began removing the lock from the door, utilizing some type of hand tool. S2 crouched behind S1 while S1 made numerous twisting motions with the tool and eventually removed the majority of the lock. S1 carried a hand bag with wheels on one end. S2 also carried a bag.

12. Both suspects entered the store. S1 broke the front glass of two firearm display cases with a hammer. The suspects removed fifty-eight (58) handguns from the display cases and fled the store. Surveillance video captures a portion of S1's face not covered, which appeared to be light to medium complexion.

13. Video surveillance also captured the suspects retuning to a small-to-midsize vehicle, light in color, parked in the west ditch of US Highway 98. The vehicle was backed in facing US Highway 98. Both suspects entered the vehicle. S1 entered the driver's seat. The vehicle fled south on US Highway 98. Polk County Sheriff's Office crime scene units identified and recovered tire impressions from the area where the vehicle was parked.

14. Affiant examined the front door of the business where entry was made. Your Affiant noticed the area surrounding the lock was not damaged except for

4

circular scratches in the metal surrounding the lock. A review of the video and physical examination of the door indicates the suspects defeated the lock by utilizing a tool to twist out the lock cylinder.

15. On January 29, 2017, at approximately 4:00 a.m., Guns Galore Inc., a federal firearms licensee located at 2440 US Highway 92 East, Lakeland, FL was burglarized resulting in the theft of forty-six (46) firearms.

16. A review of the video surveillance by investigators revealed two suspects arrive in a small-to-midsize vehicle, light in color with two doors, similar to the vehicle depicted in surveillance video from the Rapture Guns and Knives burglary on January 9, 2017. The suspects parked their vehicle along Peachtree Street on the northeast side of the plaza. After several minutes, the two suspects exit their vehicle and proceed to the front of the plaza along the east side. The suspects then make several approaches to the Guns Galore main entrance. Each suspect carried a bag, and one of them carried a hammer. On their fourth approach to the entrance, the suspects appear to gain entry as they disappear from the camera's view. The suspects reappear approximately forty (40) seconds later from the entrance area of Guns Galore, this time with at least one bag noticeably having more contents.

17. Video surveillance then captures the suspects return to and enter their vehicle. The vehicle fled west on Peachtree Street. Additional video surveillance captures the vehicle traveling west on Peachtree Street, South on Fairway Avenue and west on US Highway 92.

18. Investigators examined the front door of Guns Galore where entry was made. This examination indicates the suspects defeated the front door lock by utilizing a tool to twist out the lock cylinder, the same method utilized during the burglary of Rapture Guns and Knives.

19. Video surveillance was not available within the business, as Guns Galore is not equipped with video surveillance. However, physical evidence indicates the suspects broke three (3) glass display cases and removed forty-six (46) pistols and/or revolvers that were contained in two (2) of the displays. A rubber gripped handle, likely from a hammer, was recovered by investigators near a display case.

20. On February 1, 2017, the Tampa Police Department (TPD) contacted ATF and provided information regarding a traffic stop conducted by TPD which led to the recovery of a stolen firearm (Browning model Black Label 1911, .380 caliber, serial number 51HZT05773). A subsequent query of indices revealed the firearm was stolen during a burglary of federal firearms license Guns Galore Inc. on December 24, 2016. An individual identified during this stop explained to law enforcement that the firearm recovered is from a pawn shop in Lakeland, FL. The individual/Confidential Source (CS) indicated that CS had information pertaining to an additional seventy (70) firearms. Additionally, the individual indicated he wished to provide additional information pertaining to the seventy (70) firearms.

21. Investigators interviewed the CS. CS explained he/she learned on Monday, January 30, 2017, via a common associate known to the CS as "Gordo," that individuals known to CS as Popito and Flaco had recently obtained a "batch" of firearms. CS indicated he/she knows Popito and Flaco to obtain firearms via burglaries. CS further explained he/she subsequently questioned Flaco during the early morning hours of January 31, 2017, pertaining to this batch of firearms. During this conversation, Flaco indicated he and Popito had burglarized a location in Lakeland, FL stealing numerous firearms including Smith & Wesson .40 and .45 caliber firearms. Flaco also explained that information reported on the news regarding the number of firearms stolen during this burglary was incorrect. The CS stated the subject in his/her vehicle on February 1, 2017, who had the stolen Browning Black Label 1911 firearm, got the firearm from Popito.

22. CS also explained that he/she recalls Popito and Flaco acquiring two additional "batches" of firearms in the past. CS further explained that although they have indicated to CS that they keep their stolen firearms in a storage unit, CS has seen numerous firearms at their house, to include .38 Specials, 9mms, .40s and .45s. CS believed one of these additional burglaries occurred before Christmas (December 25, 2016) and the other after.

23. CS explained that Flaco and CS had agreed to meet at Flaco's residence, 3504 E. 10th Ave, Tampa, FL, during the early morning hours of February 2, 2017, for the purpose of Flaco providing CS with a firearm. CS indicated he

7

understood Flaco's intention was to "front" the firearm to CS. Investigators understand "front" to imply contraband is received with anticipation of payment for the supplied contraband to be provided at a later time/date.

24. CS also provided additional pertinent information in reference to Popito and Flaco. The CS explained that Popito has previously served time in prison and drives a gold or silver in color 2 door Audi with a rag and sun roof type top. The CS stated Flaco is from Puerto Rico, drives a red Scion type (small box shaped) vehicle, and is employed as a possible maintenance worker where he drives a golf cart. The CS indicated Popito and Flaco reside in the rear upstairs apartment of the main building of 3504 E. 10th Ave, Tampa, FL.

25. On January 31, 2017, at approximately 11:30 p.m., investigators initiated surveillance at 3504 East 10th Avenue in Tampa. The residence was identified as a white with green trim wood frame structure. A driveway runs down the west side the property by the main house to a smaller apartment-type building in the northwest corner of the lot. The main house appears to have a two story apartment attached to the rear of the structure with an exterior staircase leading up to it.

26. At approximately 12:15 a.m. on February 1, 2017, surveillance units observed a red Toyota, four-door SUV arrive at the residence. The Toyota was bearing Florida tag EMK-B56. A computer query identified the registered owner as Oscar Garcia GARCIA. Further intelligence analysis of GARCIA's associates led to

the identification of Jerry Nelson REYES. Further computer queries identified REYES as the registered owner of a 2003 tan Audi 2 door with an assigned Florida tag of 479-4TY. The Audi resembled the vehicle utilized in the Lakeland gun store burglaries.

27. Based on information received from the CS and further computer related intelligence, investigators determined GARCIA to be the individual known to the CS as "Flaco" and REYES to be the individual known to the CS as "Popito." Both subjects matched the physical body characteristics of the suspects depicted in the Rapture Guns and Knives surveillance video which captured the burglary on January 9, 2017.

28. On February 2, 2017, investigators established surveillance of 3505 East 10th Avenue. At approximately 9:25 p.m., surveillance units observed a tan Audi two-door car arrive at the location. The vehicle was bearing Florida tag 479-4TY, identifying the vehicle as belonging to REYES. Surveillance units observed a male subject exit the vehicle and approach the house. The tan Audi later departed the residence on 10th Avenue. The Audi was occupied by only the driver, which appeared to be REYES.

29. Surveillance was conducted on the residence through the evening hours of February 4, 2017, into the early morning hours of February 5, 2017. Surveillance units located GARCIA's vehicle, which traveled to and parked at an apartment complex located at 9126 Sabal Ridge Grove Place in Tampa. Surveillance units maintained contact with the vehicle and eventually observed

9

GARCIA and another individual, later identified as Juan TIRADO, in the parking lot near the vehicle. Shortly thereafter, investigators made contact with GARCIA and TIRADO who were inside TIRADO's vehicle smoking marijuana. Both subjects were detained and interviewed.

30. Investigators learned that TIRADO resides at the complex and identified his apartment to be #304. Contact was made with the tenant of the apartment, who was TIRADO's cousin. Investigators learned that TIRADO does in fact reside at the apartment in a room he shares with the tenant's two children. The tenant gave consent to search the apartment. During a search, investigators located a Springfield model XDS, .45 caliber, pistol bearing serial number S3263468; and a Boberg model XR45-S, .45 caliber pistol, bearing serial number S450060. Both firearms were located within a suitcase belonging to TIRADO. Both pistols were determined to be stolen from Rapture Guns and Knives in Lakeland on January 9, 2017.

31. Your Affiant conducted a post-Miranda interview of GARCIA with the assistance of ATF S/A Zayas as a Spanish translator. GARCIA stated he was visiting his coworker (TIRADO) at the apartment complex prior to being contacted by law enforcement. GARCIA stated he was smoking marijuana in TIRADO's vehicle.

32. GARCIA initially denied any knowledge of 3504 E 10th Avenue in Tampa, but later changed his story and stated he does in fact live at that location. GARCIA was shown a Facebook picture of REYES, who he identified as "Popito."

10

GARCIA stated REYES drives a champagne color, two-door sedan, and is his roommate. GARCIA stated he was aware REYES had been involved in thefts and thought that was why the police were in the area. GARCIA stated TORRES previously told him about burglaries in Lakeland he had been involved in.

33. Your Affiant questioned GARCIA about recent thefts in Lakeland, Florida. GARCIA stated he traveled to Lakeland three (3) to four (4) times in the past with REYES. When asked specifically about dates, GARCIA seemed confused and stated he didn't remember dates. GARCIA stated REYES was involved in three (3) thefts in Lakeland. GARCIA stated he participated in one (1) theft with REYES. GARCIA stated he didn't remember the name of the store or how to get there because REYES picks the stores.

34. GARCIA described the burglary he participated in. GARCIA stated TORRES opened the front door of the business by removing the lock with a hand tool. GARCIA stated REYES entered first and he followed. Upon entry, REYES broke the glass display cases with a hammer and they both removed firearms, placing them in duffle bags. GARCIA stated they both carried duffle bags and the bag REYES carried was larger. GARCIA indicated they both wore dark clothing, and both wore head and facial coverings.

35. GARCIA stated REYES drove his vehicle for the theft, and stated they did not make any stops after departing 10th Avenue in Tampa for the store in Lakeland. Following the burglary, GARCIA stated they immediately returned to 3504 E 10th Avenue in Tampa with the stolen firearms. GARCIA stated REYES

11

gave him two (2) of the stolen pistols and he (GARCIA) left the residence. GARCIA stated that he never saw the remainder of the firearms again, stating TORRES had removed them from the residence upon his return.

36. When questioned about the firearms recovered in TIRADO's apartment, GARCIA stated the two pistols were the same firearms REYES gave him following the theft he participated in. GARCIA stated he gave the firearms to TIRADO for "safe keeping." GARCIA stated he kept the pistols in his vehicle for a short time prior to giving them to TIRADO.

37. Your Affiant showed GARCIA surveillance video from the Rapture Guns and Knives burglary. GARCIA identifies himself and REYES as the subjects depicted in the video, identifying himself as the skinnier of two. When questioned about the time frame of the burglaries, GARCIA stated this particular burglary was approximately one week prior, and seemed confused of the time frame when questioned about the other Lakeland thefts. GARCIA again stated the two (2) firearms recovered at TIRADO's apartment came from the burglary he was involved in. When explained that the dates did not match in relation to the Rapture Guns and Knives theft, which was three weeks prior, GARCIA again stated the two firearms came from the theft he participated in.

38. Your Affiant conducted an interview with TIRADO, who confirmed he knew GARCIA from work at Berkley Preparatory School in Tampa. TIRADO stated he and GARCIA routinely socialize outside of work. TIRADO stated GARCIA came to visit him at the apartment complex. TIRADO stated the

12

two of them were smoking marijuana in his car just prior to being contacted by law enforcement. TIRADO stated the firearms recovered inside his room were provided to him by GARCIA, after he agreed to hold on to the firearms for GARCIA. TIRADO stated GARCIA told him he got them for a cheap price. TIRADO stated the two of them were planning to be roommates in the near future.

39.   GARCIA provided your Affiant consent to search his cellular telephone. A cursory search of the cellular phone revealed a recent text from REYES. The text was in Spanish and translated by S/A Zayas. The text instructed GARCIA to meet with REYES' father on Monday to give him the keys to their apartment at 3504 E 10th Avenue. GARCIA explained that REYES was leaving town due to the police activity and wanted his father to obtain his personal items from the residence.

40.   On February 6, 2017 at approximately 7:37 a.m., investigators observed a tan two-door Audi departing 3405 W. Dewey Street, Tampa, Florida. The vehicle was bearing Florida tag number 479-4TY and determined to belong to REYES. Investigators maintained surveillance of the vehicle until it arrived back to the above described address a brief period later.

41. ATF S/A Horst established contact with the driver and sole Occupant of the vehicle, Jerry Nelson REYES (DOB: 10/20/1960). Following a brief greeting, SA Horst explained law enforcement suspected the vehicle had been utilized in a crime. According to REYES, on January 4, 2017, REYES took his son, nicknamed Popito (Jerry REYES) to the Tampa Airport. REYES explained that his

13

son was traveling to New Mexico for an unknown period of time and was leaving his vehicle with REYES.

42. SA Horst inquired if REYES Jr. had recently brought any bags or Items to this address. In response, Reyes advised his son left a bag at the residence prior to leaving on this trip. Reyes then led investigators to a closet area of a carport attached to the house and pointed to a black duffel bag that was situated on a shelf.

43. Reyes subsequently explained that REYES Jr. had taken three Bags with him to the airport, and because of high baggage fees elected not to take the black duffel bag described above with him on this trip.

44. Reyes then provided consent to search his residence and proceeded to escort agents through the residence. A consent search began in the south east bedroom. Reyes led investigators into the north east bedroom. Investigators observed an article of clothing stuffed on top of a closet shelf in plain view and removed the item. They were black coveralls, resembling clothing worn by suspect 1 in the Raptor Guns and Knives burglary and theft. Reyes indicated his brother (Noel Reyes; DOB: 9/4/1961) and Felix Matos utilize the room as their bedroom.

45. Your Affiant is a certified interstate nexus expert and has testified as such in federal court. Your Affiant confirmed that the majority of the firearms stolen in the Rapture Guns and Knives burglary, more specifically the recovered by law enforcement, are firearms as defined by federal law and were not manufactured in the State of Florida. Therefore, the firearms would have been shipped or transported in interstate commerce prior to being acquired by Rapture Guns and Knives in the

State of Florida. More specifically the Springfield, model Model XDS, .45 caliber, serial number S3263468, the Boberg Arms Corp, model XR45-S, .45 caliber pistol, serial number S450060, the Browning, model Black Label 1911, .280 caliber pistol, serial number 51HZT05773, are firearms as defined by federal law and were not manufactured in the State of Florida. Therefore the firearms would have been shipped or transported in interstate commerce prior to their arrival in Florida.

## CONCLUSION

46.     Based upon the foregoing facts, your Affiant submits that there is probable cause to believe that Oscar GARCIA committed the crime of stealing or unlawfully taking away firearms from the business inventory of a federal firearms licensee, in violation of 18 U.S.C. § 922(u).

FURTHER AFFIANT SAYETH NAUGHT.

_____
Jeffrey A. Burt, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me
This 6 day of February, 2017

_____
JULIE S. SNEED
United States Magistrate Judge

15